Pooamend1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

KIMBERLYNN JURKOWSKI,

 *Plaintiff*,                                            Case No. 1:23-cv-03788-ACR

v.                                        Plaintiff's Motion for Leave to Amend Complaint

DISTRICT OF COLUMBIA PUBLIC

SCHOOLS, *et al.*, *Defendants*.

## Plaintiff's Motion For Leave To Amend Complaint

### Introduction

**Plaintiff filed a motion for leave to amend complaint and corresponding notice for motion to amend complaint, to Defendant (12-29-25). The Plaintiff should be allowed to amend the complaint,** A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise unpleaded issues. But failure to amend does not affect the result of the trial of that issue and based on FRCP 15 c. The Plaintiff should not be forced to remain at the operative pleading nor should the court not allow the Plaintiff to amend the complaint.

RECEIVED

JAN 0 7 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Pooamend2

## Background

On December 21, 2023, Plaintiff filed a complaint. See Complaint [1]. On December 29, 2025, Plaintiff filed a motion to amend the complaint.

## Standard of Review

Amendments are liberally granted, and the non-movant bears the burden of showing why an amendment should not be allowed. Which the Defendants have cited Rumber v. District of Columbia, 598 F. Supp. 2d 97, 102 (D.D.C. 2009, aff'd, 595 F .3d 1298 (D.C. Cir. 2010) 9 citing Forman v. Davis, 371 U.S. 178, 182 (1962). However the exception to this is FRCP 15 and the Plaintiff has not requested a fourth amended complaint, nor has the court determined the new claims and information in the proposed third proposed amended complaint are futile, nor does it lack jurisdiction to hear certain claims and that the takings at issue are for a public use.

## Argument

Plaintiff, Kimberlynn Jurkowski (Pro Se), This motion to amend is not futile and would not delay the resolution of the case. Plaintiff's amended complaints prior to deposition include: Clarifying Factual Allegations: Amending helps

Pooamend3

correct errors or clear up inadequate claims before they are solidified during sworn testimony. Amending before depositions ensures all relevant parties can be present and questioned. If pre-deposition evidence suggests additional legal grounds for the lawsuit, adding them early allows for related questioning during the upcoming deposition. Avoiding Prejudice and Delay. Amending after depositions may lead to the need for costly "re-depositions" or may be denied if it unfairly surprises the other party. Ensuring "Relation Back" for Statutes of Limitations: If the statute of limitations has passed, an amendment may "relate back" to the original filing date if it arises out of the same conduct, transaction, or occurrence. Correcting Inacuracies to Avoid Impeachment: Modifying the complaint to match newly discovered facts prevents the opposing counsel from using original, incorrect statements to impeach witness credibility during the deposition.  The plaintiff will add facts. evidence,  pleadings: Under FRCP 15(d), Plaintiff may move to amend the complaint to "conform to the evidence" if new damages, continuing conduct, and curing defects,  which are necessary to refine the scope of discovery and ensure all necessary claims and parties are properly identified, and "Freely give leave" to amend to advance justice.  Rule 15(c), Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, provides, "Whenever the claim or defense asserted in the amended pleading arose out of the

Pooamend4

conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. And FRCP Rule 4(m).

(m) TIME LIMIT FOR SERVICE. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

*Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming the district court's denial of leave to amend given the "little chance" that plaintiff would succeed on his claim). Rule 15(a) governs the amendment of pleadings, stating generously that "leave [to amend] shall be freely given when justice so requires," FED. R. CIV. P. 15(a), and "instructs the [d]istrict [c]ourt to determine the propriety of amendment on a case by case basis." *Harris v. Sec'y, United States Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997). Whether to grant or deny leave to amend rests in the district court's sound discretion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct.

Pooamend5

227, 9 L.Ed.2d 222 (1962). Such discretion is not unlimited, however, for it is an "abuse of discretion" when a district court denies leave to amend without a "justifying" or sufficient reason. *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Reasons that justify a denial of leave to amend include undue delay, bad faith, repeated failure to cure a pleading's deficiencies, undue prejudice to the opposing party, and futility of amendment. *Foman*, 371 U.S. at 182; *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999); *Caribbean Broad. Sys., Ltd. v. Cable Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998).

## Conclusion

Based on the foregoing reasons, Plaintiff's motion for leave to amend should be granted.

Date: December 29, 2025

Respectfully submitted,

/s/Kimberlynn Jurkowski

Kimberlynn Jurkowski

3540 Crain Highway

Pooamend6

Bowie, MD 20716

609 481-8878

kjurkowski777@gmail.com

### Certificate of Service

 Plaintiff emailed a copy of  Plaintiff's Motion for Leave to Amend Complaint

on December 29, 2025 to Defendant Andrea Negovan

andrea.negovan@dc.gov Assistant Attorney General

Civil Litigation Division, Section IV

400 6th St., NW Washington, DC.  20001

POOadmen1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**KIMBERLYNN JURKOWSKI,**
**Plaintiff,**

                            **Civil Action No. 1:23-cv-03788-ACR**

**v.**

**DISTRICT OF COLUMBIA PUBLIC**
**SCHOOLS, et al.,**
**Defendant**

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Jurisdiction (Subject matter, personal, and venue)
proper venue. Title VII has its own venue provision, which supersedes the general federal venue rules.

District courts have jurisdiction over Bivens causes of action under 28 U.S.C. § 1331 because they are "civil actions arising under the Constitution." 9. Are attorneys' fees..

28 U.S. Code § 1331 - Federal question. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

● All federal courts have subject matter jurisdiction over Title VII claims because Title VII is a federal law, and thus it involves a federal question. Second, the court must have personal jurisdiction over the employer. Personal jurisdiction allows a court to determine the rights and liabilities of the parties involved in the lawsuit.

● Cases that raise a "federal question" involving the United States Government , the
U.S. Constitution, or other federal laws; and

● Cases involving "diversity of citizenship," which are disputes between two parties
not from the same state or country, and where the claim meets a set dollar threshold for damages.

POOadmen2

- Personal jurisdiction is the requirement that a given court have power over the defendant, based on minimum contacts with the forum. Subject-matter
2
jurisdiction is the requirement that a given court have power to hear the specific kind of claim that is brought to that court.
- The two primary sources of the subject-matter jurisdiction of the federal courts are diversity jurisdiction and federal question jurisdiction. Diversity jurisdiction generally permits individuals to bring claims in federal court where the claim exceeds $75,000 and the parties are citizens of different states. See 28 U.S.C. § 1332.
- Under Title VII, an employee may sue his or her employer in one of the following locations: (1) in any district court in a state where the alleged Title VII violation occurred; (2) in the judicial district where the employment records that pertain to the alleged Title VII violation are maintained; (3) in the judicial district where the plaintiff would have worked had there been no Title VII violation; and, if none of the previous three conditions exist, (4) in the judicial district where the defendant's principal office is located. Therefore, in order to keep a lawsuit in federal court, an employee must file the lawsuit in a court that meets one of these requirements.
- § 16.1-76. Venue.
- In all civil actions over which the general district courts have jurisdiction pursuant
to § 16.1-77, venue shall be determined in accordance with the provisions of Chapter 5 (§ 8.01-257 et seq.) of Title 8.01.
- Venue refers to the county or district within a state or the U.S. where the lawsuit is
to be tried. The venue of a lawsuit is set by statute, but it can sometimes be changed to another county or district.
3
Causes of Action pursuant to Title VII of the Civil Rights Act of 1964, as amended
Title VII of the Civil Rights Act of 1964 (Title VII)
This law makes it illegal to discriminate against someone on the basis of race, color,
religion, national origin, or sex. The law also makes it illegal to retaliate against a person

POOadmen3

because the person complained about discrimination, filed a charge of discrimination, or
participated in an employment discrimination investigation or lawsuit.
Harassment is unwelcome conduct that is based on race, color, religion, sex (including
sexual orientation, gender identity, or pregnancy), national origin, older age (beginning at
age 40), disability, or genetic information (including family medical history). Harassment
becomes unlawful where 1) enduring the offensive conduct becomes a condition of
continued employment, or 2) the conduct is severe or pervasive enough to create a work
environment that a reasonable person would consider intimidating, hostile, or abusive.
Anti-discrimination laws also prohibit harassment against individuals in retaliation for
filing a discrimination charge, testifying, or participating in any way in an investigation,
proceeding, or lawsuit under these laws; or opposing employment practices that they
reasonably believe discriminate against individuals, in violation of these laws. The
Supreme Court has repeatedly held that Title VI regulations validly prohibit practices
having a discriminatory effect on protected groups, even if the actions or practices are not
intentionally discriminatory. Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 643
(1983) (Stevens, J., dissenting) (citing Lau, 414 U.S. at 568, 571 (Stewart, J., concurring)
andFullilove v. Klutznick, 448 U.S. 448, 479 (1980) (opinion of Burger, C.J.)); Alexander
v. Choate, 469 U.S. 287, 293 (1985)).
4
Background Facts
1) Kimberlynn Jurkowski has been an educator for more than 20 years.

POOadmen4

2) Jurkowski was hired by DCPS in August 2014 until March 2022.

3) Jurkowski is a Washington Teacher's Union (WTU) member 2014-present.

4) Jurkowski was a WTU board member 2018-2022.

5) Ms. Jurkowski worked at DCPS schools: Simon ES/se 2014-2016, King ES/se 2016-2018, and Watkins ES/se 2018-2022.

6) 8/2018 Former Principal Elena Bell of Watkins ES hired Ms. Jurkowski to support library

programs, to include students of color, caucasian students, and other students in library

events, programs, lessons, reading incentives, and to support staff and parents in reducing

the large achievement gap at Watkins.

5

7) 8/2018 Bell and Vice Principal Ashley Croft, included Jurkowski in meetings, programs,

training, and provided her with materials to help her understand the issues of race, inequality, and the large achievement gap in math and reading at Watkins for the students

of color in 1st-5th grade.

8) 8/2018 Bell and Croft provided evidence that the large achievement gap was the main

focus for the library in programs, events, resources, collaboration, and lessons at Watkins.

9) 8/2018 Bell and Croft explained and included Jurkowski in programs, events, and

meetings to help her understand inequality and the importance of developing library

programs for all students.

10) 8/2018 Bell strongly suggested that Jurkowski should make an extra effort to include

students of color who did not live on Capitol Hill. However, all Watkins students were

important.

11) 8/2018 Bell and Croft and Capitol Hill PTA provided funding for Jurkowski's programs.

POOadmen5

12) 8/2018 Jurkowski's first request for funding was for library carpets, Ipads, robots, science
tools, and books.

13) 8/2018 Capitol Hill PTA granted the funds with the support of parent Alexis Mcdougall.
The resources were delivered to Watkins library.

6

14) 8/2018 Bell and Croft set the schedule for Jurkowski to collaborate with teachers in
1st-5th grades.

15) 8/2018 Jurkowski's library classes would include the classroom teacher. Jurkowski and
classroom teacher would co-teach.

16) 8/2018 Jurkowski worked to redesign the library into a welcoming space for students,
parents, teachers, and others to use.

17) 9/2018 Jurkowski unpacked 40 boxes of books that were ready to be sent to DCPS
warehouse as 525 or unwanted items.

18) 9/2018 Jurkowski noticed that most of the books in the 525 were African American items
in good condition and not out of date.

19) 9/2018 Jurkowski realized that someone packed up many of the African American books
to remove the books from Watkins school.

20) 9/2018 Jurkowski added most of the books back into the Destiny library online system
and placed the books on the shelves in the library.

21) 9/2018 Jurkowski created book displays, did book talks, and learned what students and
teachers' needs were for reading resources.

7

22) 9/2018 Jurkowski set up the makerspace room and invited Watkins admin, teachers,
students and parents to makerspace events.

POOadmen6

23) 9/2018 Jurkowski 's first reading incentive program was Battle of the Books (BOB) for
4th and 5th graders.

24) 10/2018 Capitol Hill PTA purchased the books for Battle of the Books, and a Watkins
Battle of the Books team was formed.

25) 10/2018 Jurkowski entered Watkins Battle of the Books team into the DCPS district wide
Battle of the Books.

26) 11/2018 Jurkowski trained students 4th and 5th grade Battle of the Books competition.

27) 6/2019 Watkins Battle of the Books team won first place at the June event for DCPS
district wide competition.

28) 62019 Watkins' Bell, Croft, and Capitol Hill PTA funded a very nice party celebration for
our students' that participated in Battle of the Books.

29) 6/2019 Jurkowski received highly effective Impact score for her work at Watkins.

30) 9/2019 Jurkowski continued to add resources, programs, collaborations with teachers,
events, and began community outreach.
8

31) 6/2020 Jurkowski second year at Watkins went fine, Battle of the Book event was
canceled due to Covid

32) 6/2020 Jurkowski third year at Watkins went fine, received highly effective Impact
score.

33) 6/19/20 Jurkowski spoke to Instructional Superintendent Shawn Stover in Watkins library
while we waited for Bell to arrive and inform the staff of her decision to resign from
Watkins as the Principal.

POOadmen7

34) 6/19/20 Stover and I talked about why Bell would leave and Stover said people get tired

and it is time to take a break for Bell.

35) 6/19/20 Bell made her announcement to resign from Watkins as the Principal.

36) 6/19/20 It was common knowledge at Watkins that Bell suffered several years of

experiencing a hostile work environment of discrimination of color, discrimination of

race, discrimination of national origin, inequality for students and teachers of color, and

a large achievement gap for students of color who do not live on Capitol Hill.

37) 6/19/20 I tried to hold back my tears as Bell talked to the staff in Watkins library, and I

noticed Moxley and a few caucasian teachers smirking and smiling.

38) 6/19/20 I could feel Bell's pain and when Bell looked at me, I turned my head, so she

could not see me near tears.

9

39) 6/2020 Several staff did not return to Watkins when Bell made her exit.

40) Several more of Bell's staff exited Watkins just after Berkowitz arrived at Watkins.

41) 6/2020 I remember one staff member saying he would leave when Bell leaves and he did.

42) 6/2020 I asked the staff member why he would leave when Bell leaves, and he said things

are going to get very scary here at Watkins.

43) 6/2020 Now I realize how scary Watkins would become and that put fear and concern

into my heart and mind. I did not notice any issue until Principal Mscott Berkowitz arrived.

**Facts of the case: Cause of Action**

Count I: Discrimination based on Retaliation

 (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes,

POOadmen8

exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

False Statements:
False Claims:
False Reporting:

Civil Conspiracy and overt acts:
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)
10
Pickett v. Sheridan Health Care Center, 610 F.3d. 434, 440 (7th Cir. 2010)
The District of Columbia Public Schools and Employer, Agents, and WTU members, and agents,
violated her rights based on DC code 1-617.15, policy employee responsibility, DC code
2-1401.11, 32-1542, WTU/AFT/AFL-CIO Bargain Agreement- articles 3,6,7, and unfair and bias
treatment.
District of Columbia code § 16–4423. Vacating award.
(a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an
award made in the arbitration proceeding if:
(1) The award was procured by corruption, fraud, or other undue means;
(2) There was:
(A) Evident partiality by an arbitrator appointed as a neutral arbitrator;
(B) Corruption by an arbitrator; or
(C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
(3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for
postponement, refused to consider evidence material to the controversy, or otherwise conducted
the hearing contrary to § 16-4415, so as to prejudice substantially the rights of a party to the

POOadmen9

arbitration proceeding;

(4) An arbitrator exceeded the arbitrator's powers;

11

(5) There was no agreement to arbitrate; or

(6) The arbitration was conducted without proper notice of the initiation of an arbitration as

required in § 16-4409 so as to prejudice substantially the rights of a party to the arbitration

proceeding. Violations of Washington Teacher's Collective Bargaining Agreement: COLLECTIVE BARGAINING AGREEMENT BETWEEN THE WASHINGTON TEACHERS' UNION LOCAL #6 OF THE AMERICAN FEDERATION OF TEACHERS AND

THE DISTRICT OF COLUMBIA PUBLIC SCHOOLS OCTOBER 1, 2020 – SEPTEMBER 30,

2023.

§ 32–1311. Retaliation.

(a) It shall be unlawful for any employer to discharge, threaten, penalize, or in any other manner

discriminate or retaliate against any employee or person because that employee or person has:

(1) Made or is believed to have made a complaint to his or her employer, the Mayor, the

Attorney General for the District of Columbia, any federal or District employee, or to any other

person that the employer has engaged in conduct that the employee, reasonably and in good

faith, believes violates any provision of this chapter or the Living Wage Act, or any regulation

promulgated pursuant to this chapter or the Living Wage Act;

(2) Initiated or is about to initiate a proceeding under or related to this chapter;

(3) Provided information to the Mayor, the Attorney General for the District of Columbia, or any

other person regarding a violation, investigation, or proceeding under this chapter;

(4) Testified or is about to testify in an investigation or proceeding under this chapter; or

POOadmen10

12

(5) Otherwise exercised rights protected under this chapter.

(b) An employee complaint or other communication need not make explicit reference to any

section or provision of this chapter or the Living Wage Act to trigger the protections of this

section. The employer, or any person acting on behalf of the employer, taking adverse action

against an employee within 90 days of an employee or other person's engagement in the

activities set forth in subsection (a) of this section shall raise a presumption that such action is

retaliation, which may be rebutted by clear and convincing evidence that such action was taken

for other permissible reasons.

(c) An employee may bring a civil action in a court of competent jurisdiction against any

employer or other person alleged to have violated the provisions of this section. The court shall

have jurisdiction to restrain violations of this section regardless of an employee's dates of

employment and to order all appropriate relief, including:

(1) Assessing a civil penalty against the employer or other person of not less $1,000 nor more

than $10,000;

(2) Enjoining the conduct;

(3) Awarding liquidated damages of an amount equal to the civil penalty to the employee;

(4) Awarding front pay, lost compensation, costs, and reasonable attorneys' fees to the employee;

(5) Reinstatement of an employee to his or her former position or an equivalent position with

restoration of seniority; and

(6) Other forms of equitable relief.

13

POOadmen11

(d) An employee may file an administrative complaint against any employer or other person

alleged to have violated the provisions of this section and receive a hearing by an administrative

law judge by following the same procedure as for any other violation of this chapter. If an

administrative law judge finds that an employer or other person has engaged in retaliation, the

administrative law judge shall, by an order which shall describe with particularity the nature of

the violation, assess a civil penalty against the employer or other person of not less than $1,000

nor more than $10,000. The administrative law judge shall also order all appropriate relief

including:

(1) Enjoining the conduct;

(2) Awarding liquidated damages of an amount equal to the civil penalty to the employee;

(3) Awarding front pay, lost compensation, costs, and reasonable attorneys" fees to the employee;

(4) Reinstatement of an employee to his or her former position or an equivalent position with

restoration of seniority; and

(5) Other forms of equitable relief.

Count II: Discrimination based on National Origin and Race

 (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

Plaintiff is African American from a mixed race family, and the plaintiff has suffered because of

POOadmen12

her National Origin and Race at the hands of DC Employers, staff, and WTU Union members,
and agents.
42 U.S. Code § 2000e–2 - Unlawful employment practices
Count III: Discrimination based on Intentional Discrimination (Pretext)
12-17-21 Denying Weingarten Rights: DCPS, Principal Berkowitz, LMER.
12-17-21- 2-14-22 Failing to provide progressive discipline (warnings, PIPs) mandated by CBA before final termination. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )


12-17-21-12-11-25 Violating "Just Cause" Provisions WTU CBA
Retaliatory Timing or Actions (NLRA) protected concerted activity (Lynette Davis for J. Bell Watkins staff member 12-3-21, Interview 12-13-21, attachments sent to Lynette Davis 12-14-21 from Kimberlynn Jurkowski email tue,Dec 14, 2021 at 9:29PM  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

False Statements: False Reporting and False Claims and False Statements:
12-11-25 Principal Berkowitz denies knowledge, denies participation in the decisions for Douglas Factors and any termination details for the necessary documentation for Douglas Factors pertaining to Kimberlynn Jurkowski's termination on 2-14-22.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator

POOadmen13

evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

Jade Fuller, LMER denies knowledge of privilege log content for case 1:23-cv-03788-ACR, and Jade Fuller, LMER denies participation in adding the Douglas Factor and details regarding the termination of Kimberlynn Jurkowski into privilege evidence for case 1:23-cv-03788-ACR. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

False statements, False reporting, False claims on 12-11-25 Mscott Berkowitz claimed Kimberlynn Jurkowski on 12-17-21 was "walked out of Watkins Elementary building by someone and Jurkowski did not finish the day at Watkins Elementary, and the balance of Jurkowski's other classes after the 10:00am Moxley class, were taken by other staff or cancelled on 12-17-21. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

False statements, False reporting, False claims, Mscott Berkowitz stated on the record at his deposition on 12-11-25 deposition  that "the Ipads that Mscott Berkowitz filed a DCPS theft claim and participated in an investigation 11-2021, was unsubstantiated and Mscott Berkowitz stated that the Ipads were found on the desk at Watkins Elementary.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator

POOadmen14

evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

False reporting, false claims, false statements: 10-27-21 by Mscott Berkowitz made false reports about Ipad theft to Michael Tynes (Director, Investigation Division, DCPS) investigated Kimberlynn Jurkowski as a teacher at Watkins Elementary. Mscott Berkowitz, Principal made reports to IRT #8474, called 911 to report an Ipad theft claim regarding  Kimberlynn Jurkowski, Mscott Berkowitz called SRO to report Kimberlynn Jurkowski for Ipad theft 10-27-21.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

False statement, false claims, false statements on 11/29/21 email see Jurkowski using Ipads on Twitter page 2/16/20 from Mark Boisvert as he checked to check the status of the Ipad theft investigation with Stacey Carey DCPS.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

On 11/18/21 Mscott Berkowitz, discuss with Shawn Stover email, why LMER guidance and grieved for theft report he filed on Kimbelrynn Jurkowski with WTU step 1 stage 1 meeting.  On 11-1-21, On 11-4-21 Mark Boisvert email for update on Ipad investigation update, On 12-1-21 Mscott Berkowitz email to Stacey Carey about the results of the Ipad theft investigation regarding Kimberlynn Jurkowski update and status email. On 11-29-21,On 12/2/21 Mscott Berkowitz email to

POOadmen15

Stacey Carey DCPS, update of Ipad theft investigation regarding Kimberlynn Jurkowski. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )


False reporting, false claims, false statements: Aim Peoples, DCPS LMER, "continue progressive discipline if that date is not met. (date for Jurkowski to return the Ipads to Berkowitz and Boisvert at Watkins).10-20-21
False reporting, false claims, false statements to LMER, Aimee Peoples: 10-20-21-12-11-25: Mark Boisvert made false statements, false claims, false reporting regarding the theft of DCPS Ipads by Kimberlynn Jurkowski who is Watkins Elementary Librarian. On 9/28/21 Mark Boisvert accused and continued to accurse Kimberlynn Jurkowski of Ipad theft at DCPS Watkins Elementary, Boisvert (overt act harassment) not paying the Scholastic $666.02 and causing Kimberlynn Jurkowski distress, depression, as she checking with Boisvert on the payment and continuing to state she did not have the Ipads, and Jurkowski error in thinking she had placed Ipads off campus during Covid. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )


False statements, false claims, false reporting, to LMER and DCPS: 10-12-21 by Shawn Stover, DCPS District Superintendent for Watkins Elementary: Berkowitz follow up with LMER DCPS. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator

evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )


False statements, false claims, false reporting, to LMER, DCPS by Mscott Berkowitz on 9/29/21: Library Ipads missing, start progressive discipline with this issue as the ipads have not been returned.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )


On 10-20-21 WTU local #6 gave notice of employee violation step 1 grievance to DCPS, Mscott Berkowitz regarding Ipad theft investigation regarding Kimberlynn Jurkowski, see 1-23-03788-ACR-1877
DC Code 4-1501.05Unauthorized Improper adverse action after conditional offer improper background check employee without employee consent, permission, and informing the employee under (FCRSA) in dc, hiding or not giving communication related to background check and/or used in an employment decision (adverse action process), concealment of official principal communications by DCPS Principal Mscott Berkowitz, Jade Fuller, LMER staff, At the time of disclosure or 5/25/21 LMER nor  did DCPS/LMEr provide employee Kimberlynn Jurkowski with "A Summary of Your RightsUnder the Fair Credit Reporting Act" or DC equivalent document, LMER/Berkowitz violation of Special "Investigation Report rules",  false statements, false claims, false reporting, violation of employee based on DC Fair Criminal (FCRSA) "Ban the Box" Record Screening Amendment Act of 2014  : on 5/20/21 Mscott Berkowitz contacted DCPS, LMER, Jade Fuller, with cc: Sharon Gaskins, Shawn Stover re: Staff History Concern: regarding Kimberlynn Jurkowski:  Employers can never ask about arrests or criminal accusations that are not pending or did not result in a conviction. Violations of Human Rights (OHR), employee may be entitled to Statutory damages, Punitive damages, and other DC and Federal damages.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment,

POOadmen17

retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

On 12-19-21- 12-21-21  False Statements, False Claims, False Reporting, were made by Lona Valmoro, President, PTA Capitol Hill Cluster Schools, IS Shawn J. Stover, Mscott Berkowitz, Ramona Burton, Watkins Elementary LSAT Chairperson, in violation of District Personnel Manual (DPM) Confidentiality Rules: D.C. Code 44-552(c) (Confidentiality of Criminal Records): "These records shall not be released or otherwise disclosed to any person ..Mayor's designee during an official investigation or by court order.  D.C. Code 32-409(Protection of Privacy):,Suitability Inquiries Production DC Code 1-631.05(a)(2)(D), Mandatory Privacy Conduct, DCPS Social Media Policy, , DC Code24-25.01, E-DPM, WTU CBA, Personnel File Confidentiality, Access Restrictions, DCMR, Unauthorized Disclosure of Personnel Records under DC code 1-631.05,  Privacy Act of 1974, Fair Credit Reporting Act (FCRA), ..damages and lawsuits by employees who violated Disciplinary action, Criminal penalities, Civil lawsuits, for public dissemination. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

On 12-17-21 Mscott Berkowitz published an All Staff email, accusing the Watkins Elementary of DC of Hate Bias, and an re-enactment of the Holocaust. On the same day 12-17-21 Mscott Berkowitz began a media blitz with a team of DCPS employees (Enrique Gutierrez, Elizabeth Bartolomew,  to promote and paint guilty as blamed  the teacher Librarian Kimberlynn Jurkowski that Berkowitz never asked any questions about her lesson.  Deformation:Accusing Kimberlynn Jurkowski (librarian) publicly without due process, in an all-staff email, from Berkowitz to public on 12-17-21 includes libel with damages. D.C.

POOadmen18

Code/PolicyViolations: Principal Berkowitz must follow established hate bias incident protocols, which require investigation before public condemnation, which caused a backlash, death threats, termination, and blacklisting of Kimberlynn Jurkowski damage to future employment opportunity. Due Process Violations, releasing information, prejudging guilt before an investigation concludes. Harm to Kimberlynn Jurkowski, receiving death threats, termination, blacklisting, loss of wages, reputational damage and other damages.   (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

Comparators in DC: 2019 Lafayette Elementary v. 2021 Watkins Elementary lessons which caused investigations. Lafayette white male not part of a protected class and not part of a protective activity was required to participate in mandatory retraining along with the other white staff members. However, at Watkins the staff member was placed on administrative leave the same day 12-17-21, reports of hate bias, publicly humiliated, shamed, with a large promotion of news articles, blacklisted, 1hours and 20 minutes featured on the Edwin Black Show DC, news media local, national, and international coverage, death threats, charged with Grave Misconduct and other charges from DCPS/LMER and terminated, not given Douglas factors nor worksheet of deciding officials, due process rights violated, and here we are with, very different results for the teachers who all work for DCPS elementary school:   Watkins Teacher has claims relying on DC Human Rights Act (DCHRA), Whistleblower Protection DC Code 2-308.16, 32-1117, 1-615.54, Discrimination, unfair treatment, violation of due process, deformation, of teacher at Watkins elementary is The comparators 2019: Lafayette teachers white no protective activity and 2021:Watkins teacher african american protective activity(participation in LMER investigation for J. Bell case 12-14-21 (with Lynette Davis).  Documentation of Mscott Berkowitz Ipad theft case against Kimberlynn Jurkowski concluded on 11-12-21 unsubstantiated, but LMER/Jade

POOadmen19

Fuller did not give the report to Kimberlynn Jurkowski for over a year in 11/27/23. Jade Fuller/LMER, WTU Lee Jackson, Olga Thall, worked to hide evidence (Douglass Factors Report and worksheet), and violated the due process rights of Kimbelrynn Jurkowski during the sworn proceedings of arbitration, PERB complaints, and District Federal discovery process in district court. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )


On 12-15-2025 Kimberlynn filed a complaint in DC Superior Court Case No 2025-CAB-008255. On 12-17-21 The overt acts of Katherine Moxley explaining to her 3rd grade students that they were harmed by a re-enactment of the Holocaust during library class with Kimberlynn Jurkowski on 12-17-21 at 10:00am, Moxley forcing/coercion of her students to write that they experienced harm during the library lesson on 12-17-21, and Moxley collected the papers, took the papers to Mscott Berkowitz, who began an investigation, with his version of what he believed happened, but never spoke to Kimberlynn Jurkowski. The overt acts of Berkowitz: he shaped and encouraged students words, changed details of interviews with students to fit Berkowitz views, filed reports with IRT, MPD, DCPS, and other DCPS agencies, and caused reports to be filed with OSSE, and non-hire list to add Plaintiff's name which severely impacts future employment for Plaintiff, Berkowitz and Moxley notified parents, staff, and others to help with the investigation(overt acts in furtherance of the conspiracy both actors in agreement, outside of the scope of DCPS employment, but to commit an unlawful act or use unlawful means, resulting in damage to the plaintiff, from the conspiracy actions. False claims, False statements, False reporting, by Mscott Berkowitz, Katherine Moxley DC code 2-381-02, DC code 22-1805a, DC code 22-3704, DC coordinated defamation, coordinated blacklisting, fabricated evidence, fraudulent reporting, evidence suppression, evidence withholding, Douglas Factors, claiming no knowledge of Douglas Factors worksheet, acting in concert to bypass mandatory DC personnel regulations, Retaliatory Termination, Discrimination with malice,

POOadmen20

Administrative overreach, overt acts/adverse actions unequal treatment v. similarly situated coworkers of non color and national origin and circumstances suggesting bias, coordinated efforts to damage reputation of employee, moving the conspiracy from mere talk to active implementation. Contacting parents, news media, sending emails All Staff hate bias in library, informing DCPS, LMER, filing IRT reports, calling MPD, and reporting online as they answer parents and news media questions that there was hate bias, an re-enactment of the Holocaust, as others learn and listen, they begin to spread the words of Berkowitz and Moxley to others, causing harm to the students, parents, Watkins community, and people local, national, and international to attack and send death threats to Kimberlynn Jurkowski.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

Watkins and DCPS staff, joined the conspiracy, made false and defamatory statements, publication to a third party, fault amounting to at least negligence of a public figure, damage or actionability as a matter of law.  DCPS/LMER did not interview Jurkowski for several days later on 1-24-22 at 4:15 pm. Berkowitz began a media blitz with DCPS staff: Enrique Gutierrez, Karen Cole, Shawn J. Stover, Lona Valmoro, Carmen Tull, Robyn Harper, Page Hoffman, Jade Fuller, Lynette Davis, Kevin Washburn, Sharon Gaskins, Courtney De Anda, Elizabeth Bartolomeo, Capitol Hill PTA, Jonathan Stivers, Kytja Weir, Binyamia Applebaum, Lindsay Miller, Kathrine Moxley, Kathryn Kayne, Mark Boisvert, Aimee D. Peoples, Susan Bloom, Edwin Black (Edwin Black Show), Jill Mackie Stewart, Allyson Kitchel, Carmen Tull parent who coached her daughter to lie and say Ms. Jurkowski told students not to tell their parents about the lesson.  Carmen Tull (overt act) told her daughter to say "Ms. Jurkoski told students not to tell their parents", but that statement came from Kathrine Moxley and M. Tull knows the truth and that it is wrong to lie about a teacher, even when your parents encourage you to lie or another teacher encourages you to lie. See Carmen Tull false statement, false claims, false reporting to others in her emails 12-18.21. And

POOadmen21

Carmen Tull (overt act, pushing out false claims to inform the Equity,parent group, and furtherance of conspiracy). (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )


Team about Berkowitz details by posting on the Exchange Administrative Group 12-18-21. DC False Claims Acts, (DCFA), DC 2-381.01, DC code 2-381.01, DC code 22-2405, DC code 2-381.09, DC code 47-4106  In Kimberlynn Jurkowski statement 1/24/22 she informed investigator Carey that "Principal Berkowitz has fabricated claims and spins untrue facts to create a negative perception of me" resulting in treble damages, Deformation, Deformation Per Se, Imputation of Criminal Conduct, Professional Unfitness, Deformation Per Quod, Deformation by Impliccation,  and Blacklisting, , student coercion, hiding evidence, bias investigation,  civil liability, General False Reporting DC code 5-117.05, Emergency Calls Swatting DC code 22-1319, 911 abuse, fraud,  misrepresentation, interference with contract(tortious Interference), Breach of Fiduciary Duty, wrongful termination in violation of public policy, intentional infliction of emotional distress , wrongful intents, outrageous conduct, fraudulent Misrepresentation DC law, DC code 22-1805a, DC code 2-381.02, DC code 22-3704, resulting in harm damages, Special harm, actual, nominal, punitive, plus attorney fees,  to Plaintiff, prejudice-based injury, DC code 12-301, DC code 12-301, DC code 22-3704, DC and  common law see attached Plaintiff statement.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

 Kathryn Kayne promoted harassment in the work environment, national origin based on frequency of the discriminatory conduct, unreasonably interferes with an

POOadmen22

employee's work performance;continued veiled threats to African American staff as she consistently made (overt threats) and emailed 11-3-21 to reminded based on race and national origin: Kimberlynn Jurkowski, "My follow-up email was to ensure that you knew my role in this situation" (furtherance of conspiracy, harassment, ). DC Human Rights Act 2-1402-61, Retaliation & adverse actions 32-1311, 32-1363, Hostile work environment emails about Kaynes demotion by former Principal Bell, and now Berkowitz promoted Kayne and her behavior patterns toward African Americans at Watkins:  overt, (adverse actions unequal treatment v. similarly situated coworkers of non color and national origin and circumstances suggesting bias). Kayne gave strong verbal reminders, sent follow up email when Jurkowski cc: Kevin Washburn to inform him of Kayne's words and actions, and Kayne sent follow up emails to Watkins Admin Mark Boisvert and Kevin Washburn the Library Supervisor for DCPS on 11-3-21. 32-1311, 32-1542, 2-381.04, 2-1402.61, as Kayne made it clear to African Americans Watkins's teacher Rosalind Lamont and Rashida Hightower in email 11-18-21 (veiled adverse actions) DC code  2-1402.61), both teachers are no longer at Watkins. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

**Notable School Litigation Cases:** Engler v. Montgomery County Board of Education (2025), Canady v DCPS (2018-Long-term Resolution), Bilingual Teacher Exchange (BTE) Fraud Case (2024), Noyes Educational Campus Residency Fraud (2019), Chambers v. DC) (2022), Saint Anselm's Abbey School Case (2025), Boone Elementary Retaliation Lawsuit, Jacobson v. Clack (2024), Dobias v. School District, Fischler Catholic School Case, Stephen Grivnow (2022), Camilla Younger (2014), Cheryl Bradley (2011), Jackson-King & Ray v. District of Columbia (Active 2025-2026), District of Columbia v. Bryant (January 2024), Arbitration Reinstatement (2024), McKinney v. District of Columbia (July 2025),

POOadmen23

McKinney v. District of Columbia (July 2025), Farrar v. District of Columbia (Pending), DCPS Procurement Corruption Case (Sentencing 2025-2026), District of Columbia v. Bryant (2024), U.S. Department of Education Investigation (March 2025), Redmond Fraud Judgement (September 2025), McMath v. DCPS (December 2025), DCHRA v. Federal Law (Title VII), Willis v.Gray (2014),Proctor v. District of Columbia (2014), International Teacher Exploitation Settlement (2024), USDOE Office for Civil Rights Investigation
Ames v. Ohio Department of Youth Services.
 (2025), E15 retaliation emails 5-27-21: Susan Bloom, Mscott Berkowitz, Mark Boisvert, Jill Stewart 5-20-21, recording Berkowitz E15 Science lab at Watkins Impact threat 5-27-21, books for students of color who do not live on Capitol hill Sue Bloon and Mark Boisvert do not agree to allow books for non Capitol Hill residents email 2/13/21, Sue Bloom author visit emails 4/30/21, 5/20/21, E15 change to Jurkowski schedule by Stewart, Bloom, 5/21/21, Lona Valmoro PtA East City Books Susan Bloom 2/25/21 email, Bloom and Dunning agree 3/8/21, Bloom author book not good 5/20/21 email, E15 violation Berkowitz response 5/19/21 email, 5/25/21 e15 meet in Science lab at Watkins Berkowitz impact threat Jurkowski if she talks about it at school (overt act and adverts action recording). Mark Boisvert email 6/13/21 "Jurkowski let Boisvert know if you planning on being present during any of the remaining book fair times? In red after Sue Bloom complained that Jurkowski was at the Watkins' book fair 6/10/21 email (overt act, adverse action). (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )


Berkowitz 5/25/21 text to Jurkowski "come to Science lab for E15 meeting, Bloom and Stewart do not want to meet in the library (overt act, adverse action, discrimination, race, national origin). Text 5/27/21 Jurkowski will be out sick to Berkowitz. Email 5/25/21 Jurkowski request author visit link for African American students who did not get invite(overt act, discrimination,hostile work environment, coded language, exclusion practice, assignment changes, exclusion from meetings,

POOadmen24

disparate treatment, suspicious timing,  race and national origin against students and Jurkowski. Berkowitz email 5/20/21 the author  visit information "that you and Jurkowski didn't get."  (overt acts, discrimination,hostile work environment, race, national origin, bias). Boisvert email 5/21/21 cease desist Jill Stewart Jurkowski, 5/28/21, Jurkowski to Scholastic, 5/31/21 Sue Bloom scholastic (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. ),  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )  to push Jurkowski out of Watkins / Peabody bookfair hosted at Watkins. Mark Boisvert 6/1/21, 5/27/21, 5/28/21,

Edwin black published a 90 minute long video on 1/4/22 YouTube  about Kimberlynn Jurkowski, the Edwin Black show video included others who discussed the Plaintiff  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

In email on 11/29//21 Allyson Kitchel a Watkins Elementary parent and Mscott Berkowitz worked on plans to have Plaintiff removed from her position as Watkins Elementary School 420 12th Street in Washington DC., Allyson Kitchel expressed being "I'm torn between pitching a massive, public fit over this… On 3/1/21 , 3/3/21, 2/19/21, 2/26/21, emails were shared between Allyson Kitchel and Kimberlynn Jurkowski regarding Battle of the Books and Kitchel's son Jackson joining. (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes,

POOadmen25

exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. ).

Dr. Karen Cole, Mscott Berkowitz, Elizabeth Bartolomeo, Page Hoffman, Robyn Harper, Shawn J. Stover, Jade Fuller, Michael Lamb, Justin McClain, Allison Williams, Deitra Bryant-Mallory, Jessica Jennings, Alisha Heller, Adia Howard-Stroud, Nigel Jackson,  in emails 12/17/21, 12/22/21, worked publicity plan, to expose false claims, false statements, false reporting, about the Plaintiff before the investigation could conclude.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

Plaintiff  40 time sheets late which Berkowitz received notice DCPS, dates 8/31/20- 12-6-21.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

14

Arlington Heights, 429U.S. at 266.

Birch v. West, 870 F. Supp. 310, 313 (D. Colo. 1994

Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16]

Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 643 (1983) (Stevens, J., dissenting)

(citing Lau, 414 U.S. at 568, 571 (Stewart, J., concurring) andFullilove v. Klutznick, 448 U.S.

448, 479 (1980) (opinion of Burger, C.J.)); Alexander v. Choate, 469 U.S. 287, 293 (1985)

The Plaintiff has suffered consistent and continuous harm, unfair and biased treatment, from DC

POOadmen26

Employers, staff, and WTU Union members. The Federal Arbitration Act sets forth grounds for

setting aside an arbitration award (see 9 U.S.C. 10) and often governs disputes arbitrated in the

United States. Those include:

1. where the award was procured by corruption, fraud, or undue means;

2. where there was evident partiality or corruption in the arbitrators, or either of them;

3. where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon

sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been

prejudiced; or

4. where the arbitrators exceeded their powers, or so imperfectly executed them that a

mutual, final, and definite award upon the subject matter submitted was not made.

For international awards, the New York Convention, a treaty ratified by over 150 countries and

incorporated into the FAA at 9 U.S.C 207 , sets forth the following grounds for vacatur:

15

1. the parties were under some incapacity or the arbitration agreement was invalid under the

law of the country where it was made

2. the party against whom the award is invoke was not given proper notice of the proceedings or otherwise unable to present its case

3. the award deals with a dispute that is beyond the scope of the parties agreement to

arbitrate

4. the composition of the tribunal or arbitral procedure was not in accordance with the

parties' agreement

5. The award has not yet become binding on the parties, or has been set aside or suspended

POOadmen27

by a competent authority

6. The subject matter of the difference is not capable of settlement by arbitration under the

law of that country; or

7. The recognition or enforcement of the award would be contrary to the public policy of

that country.

The Eleventh Circuit analyzed the contractor's arguments under both the FAA and the New York

Convention and concluded that the contractor "presented nothing that comes near the high

threshold required for vacatur." While the Eleventh Circuit agreed that arbitrators should err on

the side of greater, not lesser, disclosure, it refused to vacate an award "simply because the

arbitrators worked with each other and with related parties elsewhere." Without more, the

Eleventh Circuit was unwilling to overturn the award based on the alleged bias of the arbitrators.

This case is also a good reminder that disclosures require careful attention, and should be

addressed as early in the arbitration process as possible to avoid post-award challenges. As the

Court specifically noted: "both the ICC Rules and this country's arbitration law require

arbitrators to disclose information liberally. Arbitrators must 'disclose to the parties any dealing

16

that might create an impression of possible bias.' … . And the FAA allows for 'an arbitration

award [to be] vacated due to the 'evident partiality' of an arbitrator' when 'the arbitrator knows

of, but fails to disclose, information which would lead a reasonable person to believe that a

potential conflict exists.'"

POOadmen28

## Count IV Discrimination based on harassment

Blunt v. Lower Merion School District, 767 F.3d 247, 271–73 (3d Cir. 2014)

Plaintiff has suffered consistent and continuous harassment by DC Employers, staff, and WTU

members, and agents.  (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )

Count V Discriminaiton based on wrongful termination

section 704(a) of Title VII.

Burton v. Freescale Semiconductor, Inc., 798 F.3d 222 (5th Cir. 2015)

Plaintiff has been wrongfully accused of several negative actions by DC Employers, staff, and

WTU members, and agents. WTU and DCPS are in violation of : COLLECTIVE BARGAINING AGREEMENT BETWEEN THE WASHINGTON TEACHERS' UNION

LOCAL #6 OF THE AMERICAN FEDERATION OF TEACHERS AND THE DISTRICT OF

COLUMBIA PUBLIC SCHOOLS OCTOBER 1, 2020 – SEPTEMBER 30, 2023, (overt acts, discrimination, bias, hostile work environment, adverse actions, disparate treatment, harassment, retaliation, shifting rationals, inconsistent documentation, deviation from policy, subjective criteria, assignment changes, exclusion from meetings, showing pretext, comparator evidence, protected class

POOadmen29

POOadmen29

membership, job qualification, inference of discrimination, hiding and destroying evidence, concealing evidence.. )  also they are

in violation of District of Columbia code: 32–1542. Retaliatory actions by employer prohibited.

It shall be unlawful for any employer or his duly authorized agent to discharge or in any other

manner discriminate against an employee as to his employment because such employee has

claimed or attempted to claim compensation from such employer, or because he has testified or

17

is about to testify in a proceeding under this chapter. Any employer who violates this section

shall be liable to a penalty of not less than $100 or more than $1,000, as may be determined by

the Mayor. All such penalties shall be paid to the Mayor for deposit in the special fund as

described in § 32-1540, and if not paid may be recovered in a civil action brought in the Superior

Court of the District of Columbia. Any employee so discriminated against shall be restored to his

employment and shall be compensated by his employer for any loss of wages arising out of such

discrimination; provided, that if such employee ceases to be qualified to perform the duties of his

employment, he shall not be entitled to such restoration and compensation. The employer alone

and not his carrier shall be liable for such penalties and payments. Any provision in an insurance

policy undertaking to relieve the employer from liability for such penalties and payments shall be

void.

2–1402.61. Coercion or retaliation.

(a) It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or

POOadmen30

interfere with any person in the exercise or enjoyment of, or on account of having exercised or

enjoyed, or on account of having aided or encouraged any other person in the exercise or

enjoyment of any right granted or protected under this chapter.

(b) It shall be an unlawful discriminatory practice for any person to require, request, or suggest

that a person retaliate against, interfere with, intimidate or discriminate against a person, because

that person has opposed any practice made unlawful by this chapter, or because that person has

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding

or hearing authorized under this chapter.

18

(c) It shall be an unlawful discriminatory practice for any person to cause or coerce, or attempt to

cause or coerce, directly or indirectly, any person to prevent any person from complying with the

provisions of this chapter.

2-1401.11. Prohibitions. (a) General. It shall be an unlawful discriminatory practice to do any of

the following acts, wholly or partially for a discriminatory reason based upon the actual or

perceived: race, color, religion, national origin, sex, age, marital status, personal appearance,

sexual orientation, gender identity or expression, family responsibilities, genetic information,

disability, matriculation, or political affiliation of any individual: (1) By an employer - To fail or

refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual,

with respect to his compensation, terms, conditions, or privileges of employment, including

POOadmen31

promotion; or to limit, segregate, or classify his employees in any way which would deprive or

tend to deprive any individual of employment opportunities, or otherwise adversely affect his

status as an employee; (2) By an employment agency - To fail or refuse to refer for employment,

or to classify or refer for employment, any individual, or otherwise to discriminate against, any

individual; or (3) By a labor organization - To exclude or to expel from its membership, or

otherwise to discriminate against, any individual; or to limit, segregate, or classify its

membership; or to classify, or fail, or refuse to refer for employment any individual in any way,

which would deprive such individual of employment opportunities, or would limit such

employment opportunities, or otherwise adversely affect his status as an employee or as an

applicant for employment; or (4) By an employer, employment agency or labor organization -

(A) To discriminate against any individual in admission to or the employment in, any program

established to provide apprenticeship or other training or

Count VI Discrimination based on disparate treatment

19

29 U.S.C. § 623(a)(1)

Ion v. Chevron, 731 F.3d 379 (5th Cir. 2013)

Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16]

Plaintiff has suffered consistent and continuous disparate treatment by DC Employers, staff, and

WTU members and agents. DCPS and WTU are in violation of : 2–1403.16. Private cause of

action.

(a) Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a

POOadmen32

cause of action in any court of competent jurisdiction for damages and such other remedies as

may be appropriate, unless such person has filed a complaint hereunder; provided, that where the

Office has dismissed such complaint on the grounds of administrative convenience, or where the

complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if

no complaint had been filed. No person who maintains, in a court of competent jurisdiction, any

action based upon an act which would be an unlawful discriminatory practice under this chapter

may file the same complaint with the Office. A private cause of action pursuant to this chapter

shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory

act, or the discovery thereof, except that the limitation shall be within 2 years of the unlawful

discriminatory act, or the discovery thereof, for complaints of unlawful discrimination in real

estate transactions brought pursuant to this chapter or the FHA. The timely filing of a complaint

with the Office, or under the administrative procedures established by the Mayor pursuant to §

2-1403.03, shall toll the running of the statute of limitations while the complaint is pending.

(b) The court may grant any relief it deems appropriate, including, the relief provided in

§§ 2-1403.07 and 2-1403.13(a).

20

(c) The notice requirement of § 12-309 shall not apply to any action brought against the District

of Columbia under this section.

(Dec. 13, 1977, D.C. Law 2-38, title III, § 316, 24 DCR 6038; Oct. 23, 1997, D.C. Law 12-39, §

POOadmen33

2(d), 44 DCR 4856; Apr. 20, 1999, D.C. Law 12-242,§ 2(k), 46 DCR 952; Oct. 1, 2002, D.C.

Law 14-189, § 2(i), 49 DCR 6523; May 2, 2015, D.C. Law 20-266, § 3(c), 62 DCR 1540.)

Count VII

Due Process Violation of Notice and Evidence for Employees before Termination.

As stated above, the due process clause arises from the 14th Amendment to the Constitution. The

federal government and the United States Supreme Court passed the amendment to help protect

citizens from unlawful and unfair takings. A taking can be a variety of things.

The Fifth Amendment says to the federal government that no one shall be "deprived of life,

liberty or property without due process of law." The Fourteenth Amendment, ratified in 1868,

uses the same eleven words, called the Due Process Clause, to describe a legal obligation of all

states.

It is a violation of due process for a state to enforce a judgment against a party to a proceeding

without having given him an opportunity to be heard sometime before final judgment is entered.

The general rule is that the procedural protections of due process do not extend to workers in the

private sector. Only people who work in the public sector have the guarantee of substantive and

procedural due process(contracts for employment).

21

Plaintiff's constitutional rights have been violated, her Collective Bargaining rights have been

violated, and her Civil Rights have been violated consistently and continuously by DC

Employers, staff, agents, and WTU members, and agents. (a)In any of the following cases the

POOadmen34

United States court in and for the district wherein the award was made may make an order

vacating the award upon the application of any party to the arbitration—

(1)where the award was procured by corruption, fraud, or undue means;

(2)where there was evident partiality or corruption in the arbitrators, or either of them;

(3)where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon

sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been

prejudiced; or

(4)where the arbitrators exceeded their powers, or so imperfectly executed them that a

mutual, final, and definite award upon the subject matter submitted was not made.

(b)If an award is vacated and the time within which the agreement required the award to be

made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

(c)The United States district court for the district wherein an award was made that was issued

pursuant to section 580 of title 5 may make an order vacating the award upon the application

of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the

award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in

section 572 of title 5.

(July 30, 1947, ch. 392, 61 Stat. 672; Pub. L. 101–552, § 5, Nov. 15, 1990, 104 Stat. 2745; Pub.

L. 102–354, § 5(b)(4), Aug. 26, 1992, 106 Stat. 946; Pub. L. 107–169, § 1, May 7, 2002, 116

Stat. 132.)

22

POOadmen35

I reallege and incorporate by reference in the 1-130 facts. Title VII of Civil Rights Act, as

amended on race, color, religion, sex, national origin, and retaliation. DCPS should have

reasonably known based on investigation interviews of Kimberlynn Jurkowski for DCPS/LMER

Ipad theft claim, DCPS investigation into allegations of employee misconduct 12/17/21, WTU

grievances filed, DCPS Employee Rights & Responsibilities Policy, WTU Collective Bargaining

Agreement, Title VII Civil Rights Act, as amended, that my complaints of discrimination based

on national origin, race, retaliation, harassment, and other harmful actions happened in the

workplace at DCPS Watkins Elementary School. Also, I was not given notice of a pending

Adverse Action nor was I given any of the evidence that the deciding official would use in

making the decision before I was terminated. I was not provided with an opportunity to respond

before the termination based on the evidence in the proposal that the deciding official used to

make the termination decision. I was not given an opportunity to give my response based on the

evidence before I was terminated. My Due Process Rights were violated. DCPS failed to act

resulting in the termination of Kimberlynn Jurkowski's employment as Library Media Specialist.

See attached documents: DCPS Employee Rights & Responsibilities 2017, WTU Collective

Bargaining Agreement 2016-present, WTU step 1 grievance Ipad claim Watkins/DCPS 11/17/21,

Mscott Berkowitz all staff email 12/17/21, DCPS Ipad investigation completed 11/12/21, DCPS

POOadmen36

Jurkowski statement to LMER investigator Stacey Carey 11/7/21, DCPS Jurkowski statement to

LMER investigator Stacey Carey 1/24/22. DCPS Ipad investigation concluded 1/21/22, DCPS

Notice of Initiation of Disciplinary Action 1/28/22, DCPS Notice of Termination 02/14/22, WTU

grievances 11/21 Ipad claim, Berkowitz response to WTU Ipad grievance 11/22/21, Jurkowski

DCPS Impact scores 2018-2021.

Any and all relief to make me whole for any and all lost pay, back pay, lost benefits, decreased

pension pay out, compensatory, punitive, and I continue to suffer as a result of the harm they

23

caused me . My family and I continue to suffer daily from national and international press

reports, my name when Googled shows and describes me in negative press reports, national and

international.

Plaintiff seeks to be made whole by these remedies and any and all injunctive relief allowed by

the law, jury, and judge, as a result of DCPS's intentional discrimination: Past and future lost

wages: $1,000,000.. Decreased pension payout:$500,000. Lost benefits:$200,000. Punitive

damages: $3,400,000. I also request a letter of apology from DCPS that acknowledges that any

and all accusations against me. This letter of apology is to be sent in a press release to national

and international news agencies including the news agencies that have previously reported on

these events, in an attempt to correct the record.

(1)CIVIL RIGHTS

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of

POOadmen37

1964 [42 U.S.C. 2000e–5, 2000e–16] against a respondent who engaged in unlawful intentional

discrimination (not an employment practice that is unlawful because of its disparate impact)

prohibited under section 703, 704, or 717 of the Act [42 U.S.C. 2000e–2, 2000e–3, 2000e–16],

and provided that the complaining party cannot recover under section 1981 of this title, the

complaining party may recover compensatory and punitive damages as allowed in subsection

(b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from

the respondent.

(b)COMPENSATORY AND PUNITIVE DAMAGES

(1)DETERMINATION OF PUNITIVE DAMAGES

A complaining party may recover punitive damages under this section against a respondent

(other than a government, government agency or political subdivision) if the complaining

24

party demonstrates that the respondent engaged in a discriminatory practice or discriminatory

practices with malice or with reckless indifference to the federally protected rights of an

aggrieved individual.

(c)JURY TRIAL

If a complaining party seeks compensatory or punitive damages under this section—

(1)any party may demand a trial by jury; and

(2)the court shall not inform the jury of the limitations described in subsection (b)(3).

Facts of the case and claims

44) Prior to working at Watkins ES under Principal Mscott Berkowitz, Jurkowski had never

been subjected to any disciplinary action.

POOadmen38

45) After Berkowitz became the principal at Watkins ES, he and the caucasian staff engaged

in a campaign of harassment against Jurkowski.

46) 2/11/21 Susan Bloom, Peabody ES Librarian, Principal Berkowitz, and Vice-principal

Boisvert refused to support a plan for books to be made available for students of color at

Watkins, who do not live on Capitol Hill.

47) 4/30/21 Susan Bloom/LMS for Peabody prek-K refused to include Jurkowski in author

visit planning at Watkins.

25

48) 5/14/21 Jill Stewart 1st grade teacher and Susan Bloom Peabody Librarian did not

include Jurkowski nor many of the students of color to the author visit at Watkins.

49) Stuart and Bloom (both E15 employees) changed Jurkowski's (also E15 employee)

schedule which is contrary to policy.

50) 5/19/21 Jurkowski emails questions to Berkowitz about forced E15 schedule changes

made by Stuart and Bloom.

51) 5/19-21/21 Jill Stewart sent emails to intimidate Jurkowski about E15 schedule change

complaints.

52) 5/25/21 Berkowitz, Boisvert, Stewart, Bloom, and Jurkowski had a meeting at Watkins

about E15 schedule change. Jurkowski was instructed by Berkowitz to not talk about E15

schedule change and Berkowitz threatened to lower the Impact score of Jurkowski.

Impact is a teacher rating system. A low Impact score can result in separation (from

employment).

53) 5/25/21 voice recording of Berkowitz threatening to lower Impact score of Jurkowski if

Jurkowski talked about E15 schedule change at Watkins.

POOadmen39

54) 5/27/21 Jurkowski not included in Watkins' book fair, Berkowitz gives Bloom book fair

duty.

26

55) 6/1/21 Berkowitz refused to support the Watkins library programs.

56) 6/1/21 Berkowitz orders maintenance staff to remove all items from the Makerspace

room in the Watkins library.

57) 6/13/21 Jurkowski not allowed to attend the Watkins' book fair without permission from

Berkowitz and Boisvert.

58) 6/13/21 Bloom allowed to run Watkin's book fair.

59) 6/14/21 Berkowitz paid for Bloom's Watkins student party which included Caucasian

students who live on Capitol Hill.

60) 6/14/21 Berkowitz refused to pay for Jurkowski's Watkins student party which included

students of color who do not live on Capitol Hill..

61) 6/14/21 Berkowitz and Bloom refuse to invite Watkins students of color to Blooms' party.

62) 6/14/21 Jurkowski sent to parents of Watkins' students of color the party details for

Blooms' party as requested by parents.

63) June/21 Bloom and Jurkowski were at their own homes, and working together online in a

teleconference with video and sound. Blooms' adult daughter Makalea came online,

called Jurkowski a nigger and other names.

27

64) 8/3-5/2021 Berkowitz would not allow Orion Jurkowski(husband of Kimberlynn

Jurkowski) into Watkins building to help carry items to the library and to help set up the

library for the school year. Orion Jurkowski is also a Librarian.

POOadmen40

65) 9/13/21 Dr. Kevin Washburn, LMS director, requested Berkowitz and Boisvert to give the

district issued computer to Jurkowski at Watkins after Jurkowski's many attempts to do

this herself.

66) 9/22/21 Katheryn Kayne (Watkins teacher) came to the Watkins library and asked to help

Jurkowski find the Ipads.

67) 9/22/21 Katheryn Kayne and Montgomery (Watkins administrator) warned Jurkowski to

find the DCPS Ipads asap.

68) 10/4/21 Berkowitz directed McDaniels (Covid contact tracer) not to give Jurkowski

details of Covid policy that Jurkowski requested from Mc/Daniels at Watkins.

69) 10/20/21 Berkowitz and Boisvert accused Jurkowski of Ipad theft at Watkins.

70) 10/20/21 Boisvert served Jurkowski a written warning requesting Ipads be returned.

71) 10/28/21 Berkowitz sent DCPS/LMER a Watkins school security incident report number

"8474"

28

72) 10/28/21 In report "8474" Berkowitz statement was obtained for DCPS/LMER about

claimed theft by Jurkowski of 6 Watkins Ipads.

73) 11/1/21 Berkowitz was interviewed by phone by DCPS/LMER investigator about

claimed Ipad theft by Jurkowski.

74) 11/1/21 DCPS/LMER sent Jurkowski a notice of pending investigation for DCMR Title

5: Section E1401.2(j) Willful disobedience (theft of DCPS (6) Ipads) and DCMR Title 5,

Section 1401.2(i)-Dishonesty.

75) 11/1/21 DCPS/LMER date and time of claimed Ipad theft: Tuesday, September 21, 2021,

at 9am

POOadmen41

76) 11/2/21 Stacey Carey LMER request interview for Ipad investigation with Jurkowski

77) 11/2/21 Jurkowski informed Investigator Carey(LMER DCPS) of Discrimination, hostile

work environment, harassment, and retaliation from Berkowitz and caucasian staff at

Watkins.

78) 11/2/21 Jurkowski provided voice recording to Investigator Carey of Berkowitz threat to

Impact Jurkowski if she talked about the E15 schedule change.

79) 11/2/21 No LMER employee, no DCPS employee, spoke to me about my concerns and

reports of discrimination, harassment, nor retaliation which I reported during the investigation.

29

80) 11/2/21 Jurkowski believed DCPS/LMER Employee Protections,(free from discrimination, safe work environment, welcoming environment, free from hostility, and

treated with respect) would protect her.

81) 11/2/21 DCPS Employee Rights & Responsibilities Policy, 2017 encourages employees

who experience discrimination should inform DCPS/ LMER for help.

82) 11/2/21 Jurkowski explained to Investigator Carey that "I have done my best to do a great

job to oppose discrimination and participate as a support to all students and staff at Watkins. But, I have suffered many discriminatory, unwelcoming, retaliatory, hostile,

harassing, and disparate treatment from Berkowitz and caucasian staff."

83) 11/3/21 Kathryn Kayne, Watkins 1st grade reading teacher, harassed Jurkowski during an

evacuation drill at Watkins.

84) 11/3/21 Kathryn Kayne used her duty in evacuation drill as pretext for harassing

Jurkowski and pretext to falsely claim Jurkowski was defiant.

POOadmen42

85) 11/4-7/21 Berkowitz did not give support to book fair, he gave Jurkowski extra workload

causing stress to Jurkowski at Watkins.

86) 11/5/21 Kevin Washburn, Director of Library Programs for DCPS was interviewed by

DCPS/LMER investigator about 6 ipads that Jurkowski received as a donation from

Watkins PTA in 2018 school year.

30

87) 11/5/21 Kevin Washburn statement was typewritten and obtained by DCPS/LMER.

88) 11/5/21 Kevin Washburn stated that the 6 Ipads serial numbers were never documented.

89) 11/5/21 Berkowitz excluded Jurkowski from Watkins staff meeting. This meeting was

mandatory for all Watkins staff including Jurkowski.

90) 11/5/21 Jurkowski requested the staff meeting link from Boisvert, and Berkowitz refused

to allow Boisvert to give it to her.

91) 11/10/21 Berkowitz and Jose Lopez (specialist for Spanish at Watkins) did not include

Jurkowski in an enrichment program with other specialist teachers.

92) 11/10/21 Jurkowski complained she was not on the enrichment program and Lopez made

a correction, as Berkowitz said nothing.

93) 11/12/21 DC Ipad investigation completed by DCPS/LMER.

94) LMER nor DCPS,did not send a copy of the completed investigation Ipad report to

Jurkowski.

95) 11/23/23 Washington Teachers' Union (WTU) representative gave the Ipad completed

investigation report to Jurkowski.

31

96) 11/12/21 The completed investigation Ipad report fromDCPS/LMER, found claims of

POOadmen43

theft "Unsubstantiated". Jurkowski unaware of report until 11/23/23.

97) 11/12/21 DCPS/LMER, took no action on Jurkowski Ipad claimed theft.

98) 11/16/21 Berkowitz calls police to remove Watkins student of color and parent 1:02 pm

99) 11/17/21 WTU files grievance for Berkowitz claim of ipad theft by Jurkowski.

100) 11/22/21 Berkowitz refused to meet with WTU representative to discuss Jurkowski

grievance of Ipads theft claim.

101) 12/1/21 Lynette Davis, DC LMER requested a witness interview with Jurkowski for

former Watkins' teacher Jaquah Bell harassment complaint against Mscott Berkowitz,

Principal at Watkins ES.

102) 12/14/21 Lynette Davis received follow up documents for Watkins discrimination,

harassment, retaliation details requested from Jurkowski.

103) 12/15/21 Parent Ms. A. Campbell sent a letter to Jurkowski about students of color

being forced to enter/exit the back door for after care, as other students who live on Capitol Hill (caucasians) were allowed to use the front door.

104) 12/17/21 Katherine Moxley (3rd grade math/science teacher at Watkins) picks up her

students from the library at 10:30am, and takes students to her classroom.
32

105) 12/17/21 Moxley instructs her students to write about a Holocaust event during their

library time.

106) 12/17/21 Moxley collects student papers and delivers the student papers to principal

Berkowitz by 10:40am., according to DCPS LMER investigator Carey's report 12/27/21

107) 12/17/21 Berkowitz goes to Moxley's classroom and selects a group of students to

interview.

108) 12/17/21 Berkowitz interviews a group of Moxley's students.

POOadmen44

109) 12/17/21 Berkowitz calls other staff and School Social workers to help him document

the incident according to the DCPS LMER investigator report.

110) 12/17/21 Berkowitz calls DCPS to report Jurkowski. Berkowitz claimed a hate

crime event occurred in the library.

111) 12/17/21 DCPS teams report to Watkins about 12pm and continue to investigate the

hate crime and claimed Holocaust incident in the library during Jurkowski's lesson.

112) 12/17/21 No one spoke to Jurkowski about a claim of a Holocaust event in the Watkins' library.

33

113) 12/17/21 Berkowitz did not speak to nor question Jurkowski about a claimed Holocaust lesson or event in Watkins library.

114) 12/17/21 Moxley did not speak to nor question Jurkowski about a claimed Holocaust

lesson or event in the Watkins library.

115) 12/17/21 Moxley was not in the library during Jurkowski's library time with Moxley's students.

116) 12/17/21 DCPS email to Jurkowski to notify of pending investigation into employee

misconduct.

117) 12/17/21 DCPS email to Jurkowski to notify of pending investigation into employee

misconduct and placed on administrative leave.

118) 12/17/21 Berkowitz sent an email to all staff describing a Holocaust reenactment in

Watkins Library.

119) 12/17/21 Jurkowski received calls on her personal phone from reporters requesting

information on a Holocaust reenactment in Watkins Library.

120) 1/21/22 DCPS Investigative Report #22-0033 (Ipad investigation) concluded and

determined no action is warranted.

121) 1/28/22 Notice of Initiation of Disciplinary Action.

POOadmen45

34

122) 2/14/22 DCPS notice of termination.

123) 2/14/22 DCPS Due Process Violation, no notice of grounds for Adverse Action
before termination.

124) 2/14/22 DCPS Due Process Violation, no evidence given to Mrs. Jurkowski before
termination decision.

125) 2/14/22 DCPS Due Process Violation, no name of deciding official was given to Mrs.
Jurkowski.

126) 2/14/22 DCPS Due Process Violation, did not give IPad theft investigation report to
Mrs. Jurkowski.

127) 2/14/22 DCPS did not give Mrs. Jurkowski the opportunity to respond to the charges
and the evidence before the termination decision was made.

128) 3/2/22 WTU Grievance filed.

129) 5/27/22 WTU Grievance filed for grave misconduct and other conduct during outside
of duty hours.

130) 12/23/22 EEOC Position Statement DCPS response to Complainant's charge of
discrimination 9/7/22

35

131) 2/25/24 Post hearing Arbitration briefs WTU and DCPS

132) 3/18/24 WTU Grievance Arbitration denied

Damages: and Prayer for relief:

Damages counts 1-5 Civil Conspiracy: tort claim  DC common law DC false claims Act DC Code 2-381.02(a) Compensatory, Punitive damages, DC code 22-3704, Prejudice-based harm DC Code 22-3704, Special damages Treble damages

POOadmen46

"gist" of this civil conspiracy claim is the damage inflicted by the unlawful acts committed in pursuit of the conspiracy, not the mere agreement between Moxley and Berkowitz and others itself.

**The Plaintiff has stated "but for"** Moxley, Berkowitz, and other DCPS staff concerted wrongful actions, the injury or damage would not have occurred.

**The Plaintiff's foreseeable** consequences of the conspirators' wrongful behavior caused the Plaintiff to experience the harm suffered on 12-17-21 to present.

**Causation:** the Plaintiff's damages are the direct or proximate result of Moxley, Berkowitz, and others DCPS staff's overt acts 12-17-21-present.

**Special Damages:** In civil conspiracy refer to quantifiable, out of pocket economic losses that flow based on the conspirators' wrongful acts. The use of **Plaintiff's documentation** supports and helps to determine these damages based on lost wages, income, profits, earning capacity, costs, mitigation expenses, out of pocket expenses, medical bills related to physical and emotional injury of the Plaintiff's itemized expenses

**Treble Damages:** and attorney fees for conspiracies, further help the Plaintiff with financial recovery sought.

D.C. Code § 22-3704 (Prejudicial Actions): Allows civil suits for damages (actual, punitive, fees) for intentional acts based on bias (race, gender, sexual orientation, etc.), potentially involving conspiratorial conduct. Statutes of Limitations & Accrual Discovery Rule: Under D.C. Code § 12-301, the clock starts when the plaintiff knows or reasonably should know of the injury, its cause, and evidence of wrongdoing (the "discovery rule"). Application: This discovery rule and the underlying tort's statute of limitations (often the general 3-year period for personal injury) apply to civil conspiracy claims in D.C. Key Case Law Griva v. Davison: Defines the four key elements for a common law civil conspiracy claim in D.C.. Sykes v. U.S. Attorney: Discusses the application of D.C.'s discovery rule for accrual in complex conspiracy-related cases. Sykes v. U.S. Attorney for the Dist. of Columbia - Practical Law Mar 15, 2011 —

**Specific Communications** and meeting:Plaintiff has evidence of frequent contact and communication between Berkowitz, Moxley, CHPTA, and others which suggest coordination rather than independent decision-making.

**Resulting Damages:** The plaintiff suffered actual financial harm because they relied on the misrepresentation.

POOadmen47

Negligent Misrepresentation:  A related claim exists for negligent misrepresentation , which involves a breach of duty in making a false statement and does not require the defendant the same level of intent to deceive.

**Actual and justifiable reliance:** The Plaintiff actually relied on the misrepresentation which caused the Plaintiff resulting damages.

**Causation and damages:**  The intentional misrepresentation of statements by Berkowitz, Moxley, LMER, CHPTA, and others was the cause of the plaintiff's resulting damages. And Berkowitz and Moxley had  knowledge of the falsity and intent to deceive students, parents, and DCPS.

**Damages: compensatory (**pecuniary loss): These are primary forms of damages and are intended to restore the Plaintiff to the financial position they were in before the fraud occurred.  Out of pocket loss includes:

**Consequential Damages:** Plaintiff may also recover for other losses that are the natural and direct consequences of their reliance on the misrepresentation. This includes related expenses, loss profits, diminution in value.

**Punitive Damages:**  These are to punish the defendant for their actions and deter future misconduct. Defendant acted with evil motive, actual malice, intent to injure, or willful disregard for the rights of the Plaintiff.

**Attorney's Fees:** "American Risk Rule"

PRAYER FOR RELIEF
WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants, jointly and severally, and award the following relief:
A. Actual Compensatory damages in an amount to be proven at trial by jury
This section outlines the specific remedies the Plaintiff seeks from the court.
An award of compensatory damages for lost wages and IIED (Intentional emotional distress).
An award of punitive damages against the administrators for their malicious conduct.
An order for reinstatement to the Plaintiff's position.
An award of costs and attorneys' fees.
Any other relief the Court deems just and proper.
Jury demand
The plaintiff can demand a jury trial for all issues that are triable by a jury.

POOadmen48

B. Punitive damages to punish Defendants for their malicious and willful conduct. These may be awarded in cases involving egregious or malicious

C. Pre-judgment and post-judgment interest.

D. The costs of this action and reasonable attorneys' fees.

E. Treble Damages: Under certain specific D.C. statutes, such as the D.C. false claims Act or business conspiracy statutes, a prevailing plaintiff may be entitled to recover three times their actual damages, especially if the defendant's actions were willful and malicious.

F. Any and all other relief as the Court deems just and proper.

A declaration that the termination was unlawful.
An award for back pay and front pay.
Compensatory and punitive damages.
Attorney's fees and costs, where permitted by law.

Signature
Kimberlynn Jurkowski /s/ Kimberlynn Jurkowski
3540 Crain Highway, Bowie Md 20716, 609 481-8878,
kjurkowski777@gmail.com
Date 1-5-26
VERIFICATION

I, Plaintiff: Kimberlynn Jurkowski], hereby verify that the facts and allegations set forth in this Complaint are true and accurate to the best of my knowledge, information, and belief.
Signature Kimberlynn Jurkowski Pro Se
January 5, 2026

POOadmen49

Certificate of Service

I hereby certify that on January 5, 2026, I asked Defendant in email, if Defendant would consent to the Amended Complaint and they requested a copy of the proposed amended complaint. The Plaintiff has included with redline a proposed complaint 1:23-cv-03788-ACR with this email attached. With evidence details, as well. And it has been emailed to Defendant Andrea Negovan, Assistant Attorney General.

400 6th Street, NW, Washington D.C. 20001